(121 App. Div. 407.)

### PEOPLE v. STURGIS.

(Supreme Court, Appellate Division, Second Department.  Oct. 4, 1907.)

1. STATUTES—PENAL STATUTES—CONSTRUCTION.

A penal statute must be strictly construed, and a provision not within its intent will be disregarded.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 322, 323.]

2. MUNICIPAL CORPORATIONS—SMOKE ORDINANCE—VIOLATIONS—PERSONS LIABLE.

Sanitary Code, § 96, known as the "Smoke Ordinance," which requires every furnace used in working engines within a building to be equipped with smoke consumers, does not render an employé liable for the penalty imposed for a failure to provide the furnace with smoke consumers; that being the duty of the employer.

3. SAME—NATURE OF OFFENSE.

Sanitary Code, § 96, known as the "Smoke Ordinance," prohibiting one from allowing smoke to escape from any building, to the annoyance of any person not being therein engaged, is not violated where the smoke escaping from a building does not annoy the people living in the vicinity thereof, and where the smoke is such that its effect on air and property is imperceptible.

Appeal from Court of Special Sessions of City of New York.

William B. Sturgis was convicted of a violation of Sanitary Code, § 96, commonly known as the "Smoke Ordinance," and he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Edward L. Blackman, for appellant.

James D. Bell (David Joyce, on the brief), for the People.

WOODWARD, J.  Section 96 of the Sanitary Code, under which the defendant, as superintendent of the factory of the William E. Uptegrove & Bro. Company, has been convicted and fined $100, reads as follows:

"The owners, lessees, tenants, occupants and managers of every building, vessel or place in or upon which a locomotive or stationary engine, furnace or boilers are used, shall cause all ashes, cinders, rubbish, dirt and refuse to be removed to some proper place, so that the same shall not accumulate; nor shall any person cause, suffer or allow smoke, cinders, dust, gas, steam or offensive or noisome odors to escape or be discharged from any such building, vessel or place to the detriment or annoyance of any person or persons not being therein or thereupon engaged.  Every furnace employed in the working of engines by steam in any building shall be constructed so as to consume the smoke arising therein or therefrom."

This is a penal statute, and is, under well-established rules, to be strictly construed.  It is obvious that no mere employé is charged with the duty of constructing and maintaining the furnaces used in a manufacturing plant.  Such employé is not therefore within the spirit of the enactment, and it cannot be presumed that the legislative intent was to reach the defendant in this case, who was the superintendent of the factory, because the owners may have failed to have their furnaces equipped with smoke consumers, however liable he

might be for making use of such furnaces in such a way as to violate the provision against suffering or allowing smoke to escape or be discharged from the factory. The rule is well established that a provision of a statute, not within the spirit of the enactment, is not a part of the law, and it is to be disregarded. Riggs v. Palmer, 115 N. Y. 506, 509, 511, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819. It may be remarked, in passing, that there is much room for doubt whether the evidence is sufficient to show that the furnaces in use in the factory involved in this case were not properly equipped with smoke consumers. The undisputed evidence is that they were equipped with the best known appliances at the time of the trial, and the affirmative evidence that smoke was seen to flow from the smokestacks on a given day may have been due to an improper use of the appliances, or a failure to put them into operation. But we prefer to rest this branch of the case upon the obvious fact that the provision of the Sanitary Code was not designed to reach an employé in a matter which was beyond his control. He might refuse to make use of furnaces, which would render him liable for violating the other provisions of the section, but he could not be held liable for a failure to provide the furnaces with proper equipments. That is a duty imposed by law upon the employer, and there is no good reason for punishing an employé for the employer's neglect of a duty. If the owners of the factory were before the court, a different question would be presented under this clause of the section.

We come, then, to the question of the defendant's guilt under the provision of the Code:

"Nor shall any person cause, suffer or allow smoke, cinders, dust, gas, steam or offensive or noisome odors to escape or be discharged from any such building, vessel or place to the detriment or annoyance of any person or persons not being therein or thereupon engaged."

The facts alleged and proved show that the factory of William E. Uptegrove & Bro. Company was situated on the East river front; that the nearest places of residence were some 500 feet distant from the same, and that in every other direction there were no residences for many thousands of feet; that on the 19th day of April, 1906, one Daniel Melody, a sanitary inspector and a police officer, saw smoke coming from three of the smokestacks of this factory. There is not a particle of evidence in the case to show that this smoke operated to "the detriment or annoyance of any person or persons not being therein or thereupon engaged," or, indeed, that it annoyed or that it was detrimental to any individual, whether on or off the premises, the nearest possible approach to such evidence being that the sanitary inspector, in answer to the question in reference to this smoke, "Was it an agreeable smell?" said, "No, sir." As we read the provisions of the Sanitary Code, it is not contemplated that smokestacks shall exude delicate perfumes, such as shall commend themselves to the olfactory nerves of inspectors bent upon the discharge of duty, but all of the requirements of its provisions are met when the persons in charge of such smokestacks have refrained from permitting smoke to "escape or be discharged from any such building, vessel, or place, to the detriment or annoyance of any person or persons not being therein or thereupon

engaged." That is the test of liability; that there shall be in fact a nuisance, not perhaps within the full scope of the common-law nuisance, but a nuisance which, by annoying one or more persons, shall be constructively a public nuisance. The fact that in some jurisdictions enactments have been sustained which have provided that dense smoke flowing from smokestacks or otherwise shall constitute a nuisance is of no importance here, because there has been no such attempt on the part of the power enacting the Sanitary Code. It has been provided, not that the exuding of smoke, but permitting smoke to escape in such a manner as to work a detriment or annoyance to any person or persons not upon the premises, that constitutes a nuisance, and, until the people have established this fact, there is no crime proven.

In the case at bar the defendant established affirmatively that the smoke was produced by the burning of Spanish cedar shavings, the smoke from which was entirely innocuous; that the people who lived within 500 feet of the factory, and who had known the conditions for years, had never been annoyed by the same; and that the constituent elements of the smoke were such that their effect upon the air or upon property would be imperceptible. Under such conditions, it is certain that the defendant has not been guilty of a violation either of the letter or the spirit of this provision of the Sanitary Code, and his conviction is error, demanding a reversal of the judgment.

This conclusion makes it unnecessary to consider the constitutional questions raised, and these may properly await the coming of a case where the people have established the facts necessary to show a violation of the Code.

The judgment appealed from should be reversed. All concur; HIRSCHBERG, P. J., in result.