MATILDA K. GARDINER, APPELLANT, v. CITY OF OMAHA, APPELLEE.

FILED DECEMBER 23, 1909.   No. 15,874.

Cities: VOID ASSESSMENTS: RELEVY: STATUTES: VALIDITY. Section 250, ch. 12a, Comp. St. 1909, the curative act authorizing cities of the metropolitan class to reassess void special assessments levied under the charter of 1897, is not void as class legislation, because it excludes from its operation void assessments levied under former charters.

APPEAL from the the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*W. H. Herdman* and *W. J. Coad,* for appellant.

*Harry E. Burnam* and *John A. Rine, contra.*

ROSE, J.

This is a suit to enjoin the collection of a paving assessment of $80.64, which had been levied against a lot owned by plaintiff in the city of Omaha. Invalidity of a curative statute authorizing the assessment is the ground on which the injunction is sought. The district court upheld the act and sustained a demurrer to the petition. From a dismissal of the action plaintiff has appealed.

The following statements are summarized from the petition: In 1898 defendant levied against plaintiff's lot a void paving assessment which was canceled by a decree of the district court for Douglas county in 1904. In 1906 defendant reassessed the same lot for the same improvement, and in doing so assumed to exercise a power conferred by a curative act passed by the legislature of 1903 in the following form: "Whenever any special assessment or assessments upon any lot, or lots, block, lands, or parcels of lands for any of the local improvements which have heretofore been made under the provisions of an act entitled 'An act incorporating metropolitan cities and

defining, prescribing and regulating their duties, powers and government, and to repeal an act entitled "An act incorporating metropolitan cities and defining, regulating and prescribing their duties, powers and governments," approved March 30, 1887, and all acts amendatory thereof, being chapter 12a of the seventh edition of the Compiled Statutes of the state of Nebraska (edition of 1895) entitled "Cities of the Metropolitan Class" ' which passed and took effect March 15, 1897, are invalid, uncollectible or void or are found or adjudged by any court to be invalid, uncollectible or void for any reason whether because of the lack of a petition of the property owners or any insufficiency, irregularity or informality in said original petition therefor, or because of any defect, irregularity or invalidity in any of the proceedings on account of failure to observe any of the prerequisites or requirements of the said act or of the ordinances or resolutions of such city or rules adopted by the city council of such city, whether such defects are jurisdictional or otherwise, or whenever any such special assessment or assessments have been paid under protest and the money so paid has been recovered back from such city or may hereafter be recovered back from such city for any reason whether because of the lack of a petition of the property owners or any insufficiency, irregularity or informality in said original petition therefor or because of any defect, irregularity or invalidity in any of the proceedings on account of the failure to observe any of the prerequisites or requirements of said act or of the ordinances or resolutions of such city or rules adopted by the city council of such city, whether such defects are jurisdictional or otherwise, then in either case, the mayor and city council for the purpose of assisting in the payment of the cost of such improvement shall have the power to levy a new assessment or a reassessment of special taxes upon said lot, lots, blocks, lands, or parcels of lands upon which the former assessment is found to be invalid or uncollectible, or has been decreed or adjudged or found

to be invalid, uncollectible or void. Such special assessments so levied shall be in proportion to and not in excess of the special benefits derived by such property, as compared with the special benefits received by other properties on account of such improvements as found by the city council sitting as a board of equalization, after notice as required by law for the equalization of assessments in the first instance, and the mayor and city council shall deduct from such benefits and allow as a credit before such new assessment or reassessment an amount equal to the sum of the instalments of the original levy paid upon said property, except where said amount was paid under protest. Provided further that all proceedings connected with the making of any such local improvements under said act are hereby retrospectively legalized and validated and all defects in such proceedings are hereby cured, but the assessments heretofore levied therefor shall not thereby be legalized or cured, but new assessments and reassessments may be levied for such improvements after a new equalization as hereinbefore provided." Laws 1903, ch. 15; Comp. St. 1909, ch. 12a, sec. 250.

It is the reassessment under this act which plaintiff seeks to enjoin, and the petition further states: The legislation applies to void assessments levied subsequent to March 15, 1897, but excludes those levied at earlier dates. By general law Omaha became a city of the metropolitan class March 30, 1887, and since that time has continuously exercised statutory authority to make public improvements and to assess property benefited thereby. Many levies for the purpose stated were made prior to April 10, 1903, when the curative act became effective, and large sums thus assessed have been declared void by the courts. Of such canceled assessments the greater part, both in number of levies and in amount of taxes was levied prior to March 15, 1897. Many public improvements which were made in contemplation of the payment of special assessments subsequently canceled were in good condition April 10, 1903, though constructed prior to March 15,

1897, and many were worn out April 10, 1903, though constructed after March 15, 1897.

Plaintiff asserts that the facts pleaded by her show the curative act under which her lot was assessed affects diversely the rights and property of persons and classes similarly situated, and that it is founded on a classification so arbitrary, capricious and unreasonable, and is in its operation so partial, invidious and discriminatory, as to be within the inhibition of the constitutional provisions relating to due process of law, to equal protection of the law, and to special or class legislation forbidden by the following provisions: "The legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Incorporating cities, towns, and villages, or changing or amending the charter of any town, city or village. * * * In all other cases where a general law can be made applicable, no special law shall be enacted." Const., art. III, sec. 15. An able argument has been presented in support of the proposition that the legislature in making time the basis of its classification, and in fixing March 15, 1897, as the dividing line between void assessments included within and void assessments excluded from the operation of the curative act, violated the rule that a classification for the purpose of legislation "must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the subjects classified." *State v. Farmers & Merchants Irrigation Co.*, 59 Neb. 1. The argument assailing the classification, however, does not seem to be conclusive. The act applies to and without discrimination includes invalid, uncollectible, void and canceled special assessments levied under the metropolitan charter which became effective March 15, 1897. Such assessments are not "taxes" in the ordinary sense of that word, but are employed as a means of requiring owners of property specially benefited by city improvements to contribute to the cost of making them. The

power of the legislature to confer on a municipality authority to make public improvements and to assess property specially benefited thereby is conferred in direct language by the following provision of section 6, art. IX of the constitution: "The legislature may vest the corporate authorities of cities, towns and villages, with power to make local improvements by special assessment, or by special taxation of property benefited." The legislature may withhold or grant this power. That it may require a city to exercise it within a reasonable time, if granted, is too plain for argument. Time is certainly a reasonable basis of classification in determining how far back a city may go when exercising its power to relevy void special assessments. Would the condition of improvements or the present benefits to property be a more reasonable basis? The difficulty of framing a law with that end in view, or perceiving its application to any case and of enforcing its provisions would at least suggest questions as to its practicability. In any event the time for barring relevies or void special assessments is within the discretion of the lawmakers. It will be presumed that they acted with full knowledge of the conditions relating to that subject. The reasons of public policy which prompted them to make time the basis of their classification may not appear on the face of the act or in plaintiff's petition. Circumstances affecting sales of real estate, transfers of titles, and other matters relating to the public welfare may have suggested the repose of void assessments levied under former charters. It will be further observed that the lawmakers excluded from the operation of the law all void special assessments levied during or preceding a period of financial and industrial depression. When doing so they may have had knowledge of conditions which made the results of the panic important considerations in limiting to subsequent assessments the municipal power granted by the curative act. A classification based on time is not necessarily unreasonable, when applied to the facts pleaded. Whenever the legisla-

ture limits the time for filing a claim against a city, for redeeming land from a tax sale, or for bringing a suit, time is made an element in classification. Under laws of that character one person may enjoy the benefit of a remedy which by reason of a day's difference in time is denied to another; but the latter, for that reason, is not deprived of due process of law or of the equal protection of the law, and such statutes are not void as class legislation. The reasons for sustaining statutes of limitations apply to plaintiff's objections to the act in question. In arguing this point counsel for defendant cited *Hall v. Street Commissioners*, 177 Mass. 434, a case involving the validity of a curative act relating to the city of Boston, and containing the following provision: "The board of street commissioners of said city, at any time within two years after any new sewer or drain for the collection or disposal of sewage or of surface or ground water is completed, shall assess upon the several estates especially benefited by such sewer or drain a proportional part of the cost thereof, not exceeding in amount the sum of four dollars per linear foot. Any such assessment which shall be found to be invalid and is unpaid, or which shall have been recovered back, may be reassessed by said board to the amount for which and to the person to whom the original assessment ought to have been made." The opinion was delivered by Chief Justice Holmes, now a member of the supreme court of the United States, who said: "We see no objection to the statute in the fact that the statute does not apply to any sewer built before a certain date, it does not matter precisely what. Such a limit of liability by time is no more unreasonable or contrary to any principle of constitutional right than is a statute of limitations."

For the reasons given, the district court did not err in upholding the act assailed by plaintiff, and the judgment is

AFFIRMED.