STATE, EX REL. J. HERMAN KRITTENBRINK, APPELLEE, V. CHARLES W. WITHNELL, BUILDING INSPECTOR OF THE CITY OF OMAHA, APPELLANT.

FILED MARCH 26, 1912. No. 16,600.

1. Municipal Corporations: ORDINANCES: VALIDITY: EVIDENCE. To overturn a city ordinance on the ground that it is unreasonable and arbitrary or that it invades private rights, the evidence of such facts should be clear and satisfactory.

2. ———: ———: ———: PRESUMPTIONS. In determining the validity of a city ordinance regularly passed in the exercise of police power, the court will presume that the city council acted with full knowledge of the conditions relating to the subject of municipal legislation.

3. ———: POLICE REGULATIONS. In the exercise of police power delegated by the state legislature to a city, the municipal legislature, within constitutional limits, is the sole judge as to what laws should be enacted for the welfare of the people, and as to when and how such police power should be exercised.

4. ———: ———. Within constitutional limits, private property is held subject to proper rules regulating the common good and the general welfare of the people.

5. ———: ———. In testing police regulations, the court should inquire whether they have some relation to the public health, safety or welfare, and whether such is in fact the end sought to be attained.

6. ———: ———: NUISANCES. While a city having authority "to define, regulate, suppress and prevent nuisances," cannot arbitrarily prohibit harmless and inoffensive private enterprises by the exercise of such power, the acts of the city council in dealing with nuisances may be held conclusive, if the subject of legislation might or might not be a nuisance, depending upon conditions and circumstances.

7. ———: ———. The passing of an ordinance forbidding the construction of brick-kilns in a city may be a valid exercise of police power.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed.*

*Harry E. Burnam, I. J. Dunn, John A. Rine* and *Clinton Brome,* for appellant.

*H. C. Murphy, S. L. Winters* and *R. E. McNally, contra.*

ROSE, J.

This is an application for a writ of mandamus commanding defendant, as building inspector of Omaha, to issue to relator a permit to construct a brick-kiln on a tract of land owned by him in that city. Defendant had refused to issue the permit because he could not do so without violating an ordinance declaring: "It shall be unlawful for any person, persons, firm or corporation to erect or construct within the city of Omaha any kiln or oven to be used in the manufacture of brick." The trial court held, in harmony with the views of relator, that the ordinance was arbitrary, unreasonable and void, as being an invasion of personal rights and of private property. The writ was allowed, and defendant has appealed.

To establish the invalidity of the ordinance relator adduced proof tending to show: He is the owner of six and a half acres of land situated in the outskirts of Omaha, in the immediate neighborhood of a dairy and a pasture, remote from the densely populated portions of the city. He planned to construct and operate on the premises described a modern kiln, different from that formerly used in the manufacture of brick. According to his summary of the proofs relating to the new method, the brick-kiln "is nowise harmful to health or vegetation, produces little or no smoke, no deleterious gases, no obnoxious odors, and is not a rendezvous for vagrants and tramps." It is argued by relator that the contemplated enterprise at the place described would not be a nuisance *per se*, and that the city had no authority to interdict it as such. Had the city power to pass and enforce the ordinance?

By charter the state legislature delegated power to the city of Omaha in the following terms: "To make and enforce all police regulations for the good government, general welfare, health, safety and security of the city and the citizens thereof;" and "to prescribe fire limits and regulate the erection of all buildings and other structures within the corporate limits;" and "to define, regulate, suppress and prevent nuisances." Comp. St. 1911, ch. 12*a*, sec. 144, subds. XXV, XXXII, and sec. 52. Under the authority thus conferred, the city council in passing the ordinance obviously intended to exercise the police power of the city, and the courts should not interfere with its enforcement unless its unreasonableness, or the want of a necessity for such a measure, is shown by satisfactory evidence. *Peterson v. State*, 79 Neb. 132. It will be presumed that the city council in passing the ordinance acted with full knowledge of the conditions relating to the subject of brick-kilns located within the city limits. The reasons of public policy which prompted the city lawmakers to pass the ordinance may not appear on the face of the legislation, or in relator's petition, or in the evidence adduced at the trial of this case. *Gardiner v. City*

*of Omaha,* 85 Neb. 681. The inquiry, therefore, is not necessarily limited to the city's authority to prevent or abate nuisances, but extends to every phase of police power delegated in any form to the municipality. In *State v. Drayton,* 82 Neb. 254, a well-established doctrine was announced in this form: "Within constitutional limits, the legislature is the sole judge as to what laws should be enacted for the protection and welfare of the people, and as to when and how the police power of the state is to be exercised." Relator's land in Omaha is held subject to proper rules regulating the common good and the general welfare of the people of that city. *Wenham v. State,* 65 Neb. 394. In testing police regulations like the ordinance assailed, the court should inquire "whether they have some relation to the public health or public welfare, and whether such is, in fact, the end sought to be attained." *Smiley v. MacDonald,* 42 Neb. 5; *In re Anderson,* 69 Neb. 686; *Union P. R. Co. v. State,* 88 Neb. 247. According to the principles of law to which reference has been made, relator was not entitled to a writ commanding defendant to issue a building permit in violation of the ordinance, unless the proofs clearly answer those inquiries in the negative and show that the enactment was an unreasonable and arbitrary invasion of individual rights under the guise of police regulation. *Wenham v. State,* 65 Neb. 394; *Union P. R. Co. v. State,* 88 Neb. 247.

Relator has not yet constructed his kiln, and the testimony adduced to show that it would not become a nuisance is based largely on observations of existing kilns operated according to the modern method described in his plans and evidence. According to the proofs the volume and character of the smoke will be less objectionable under the new process, but the stack will emit smoke of a light color continually. The fair inference from all the evidence is that black smoke in great volume will escape at intervals under ordinary management of the plant. It is undisputed that clay, excavated on the premises, and

coal, ashes and brick, in vast quantities, will be handled
there. Teams and men will be required for that purpose.
The fact that the wind in this climate will carry dust and
soot long distances at times cannot be disproved.  On
one side of the kiln site an addition to the city is rapidly
being occupied by valuable residences and there is no
factory in the immediate neighborhood. The proofs show
that there are 13 houses within two blocks of relator's
land, and a witness for defendant testified that within 5
blocks there were 20 or 25 families. Smoke alone may
amount to a nuisance, where it materially interferes with
the comfort of human existence in the house and grounds
of the owner, though they are located near the edge of a
city no great distance from smoke-producing factories.
*Crump v. Lambert*, 3 Eq. Cas. (Eng.) 408.  An ordinance
"prohibiting the emission of dense smoke within the cor-
porate limits of the city" has been held valid as a proper
exercise of police power.  *City of St. Paul v. Haughbro*,
93 Minn. 59; *City of Buffalo v. Ray Mfg. Co.*, 124 N. Y.
Supp. 913; *City of Rochester v. Macauley-Fien Milling
Co.*, 199 N. Y. 207, 32 L. R. A. n. s. 554.  While a city,
having authority "to define, regulate, suppress and pre-
vent nuisances," cannot arbitrarily use it to prohibit
harmless and inoffensive private enterprises, the acts of
the city council in exercising such police power may be
held conclusive, if the subject of municipal legislation
might or might not be a nuisance, depending upon condi-
tions and circumstances. *Harmison v. City of Lewistown*,
153 Ill. 313; *North Chicago City R. Co. v. Town of Lake
View*, 105 Ill. 207; *Bowers v. City of Indianapolis*, 169
Ind. 105; *City of Buffalo v. Ray Mfg. Co.*, 124 N. Y. Supp.
913; *Powell v. Brookfield Pressed Brick Tile Mfg. Co.*,
104 Mo. App. 713; *Kansas City v. McAleer*, 31 Mo. App.
433; *Lawton v. Steele*, 119 N. Y. 226.  Brick-kilns are
frequently condemned as nuisances and are proper sub-
jects of police regulation.  *State v. Board of Health*, 16
Mo. App. 8; *Kirchgraber v. Lloyd*, 59 Mo. App. 59; *Har-
ley v. Merrill Brick Co.*, 83 Ia. 73.  If a brick-kiln is in

fact a nuisance, modern methods of construction and careful operation are immaterial. *Powell v. Brookfield Pressed Brick & Tile Mfg. Co.,* 104 Mo. 713.

In the present case, it seems to be conceded that a brick-kiln is an inviting place for tramps in cold weather. While relator expressed the conviction that he could keep them away, there is nothing to indicate they would not be turned loose on the residents of the neighborhood in the outskirts of the city, where police protection may be inadequate. Near valuable residences relator intends to build a smoke-stack 130 feet high, and to remove clay to a depth not disclosed by his plans or evidence. The value of residence property in the neighborhood might be damaged by relator's enterprise. These were proper matters for the consideration of the city lawmakers. When the entire record is considered, the evidence does not justify a finding that the ordinance in question has no relation to the public health, safety or welfare, or that it is not a *bona fide* exercise of police power, or that it amounts to an unconstitutional invasion of relator's individual rights, or that it is arbitrary and unreasonable. In this view of the law and the facts, he has not made a case entitling him to the writ.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.